UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| MERGE HEALTHCARE INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 2:10-cv-00082 |
| RICHARD A. LINDEN & SCOTT T. VEECH, | ) ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT OF
PLAINTIFF MERGE HEALTHCARE INCORPORATED**

INTRODUCTION

This case presents a text-book example of the greed that gripped much of this country during the first half of the prior decade – greed that ultimately contributed to the greatest economic calamity since the Great Depression. Defendants, Richard Linden ("Linden") and Scott Veech ("Veech") (collectively "Defendants"), are the former CEO and CFO, respectively, of Plaintiff, Merge Healthcare Incorporated ("Merge"). (Proposed Findings of Fact ¶¶ 3-4, hereinafter "PFF ¶ __.") From 2002 through 2005, in violation of both company policies and federal securities laws, Defendants orchestrated and participated in an elaborate revenue-recognition scheme to create the impression that Merge was more successful than it really was; the motivation of which was to drive-up Merge's stock price. (Id. ¶¶ 68-71.) Defendants were able to personally benefit from that elevated stock price by exercising millions of dollars of stock options. (Id. ¶ 15.)

In January 2006, however, Defendants lost control of their scheme and it began to unravel. At that time, Merge's board of directors began receiving anonymous whistle-blower letters alleging improper accounting, specifically, improper revenue recognition. (*Id.* ¶ 45.) The Audit Committee of Merge's Board of Directors undertook an extensive and expansive eight-month investigation of these allegations. (*Id.* ¶¶ 47-49.) During the course of this investigation, and as a result of the eventual conclusions of the investigation (that Merge would have to restate nearly four years worth of financial results because of Defendants' scheme), Merge and Defendants were named as defendants in a series of federal securities fraud class actions that were eventually consolidated in a single action in this Court captioned, *Maiden v. Merge Technologies, et. al.*, No. 2:06-00349 (the "Class Action"); a shareholder derivative action in the Circuit Court of Milwaukee County captioned, *Willman v. Barish, et al.*, No. 06-CV-8095 (the "Derivative Action"); and an investigation by the United States Securities and Exchange Commission (and an eventual SEC enforcement action in this Court captioned, *SEC v. Merge Healthcare Inc., et al.*, No. 09-CV-1036) (the "SEC Action"). (*Id.* ¶¶ 51-60, 68-70.) In addition, in response to the Derivative Action, Merge's Board of Directors formed a Special Litigation Committee ("SLC") to investigate the allegations of the Derivative Action (the "SLC Investigation"). (PFF ¶¶ 56-60.) (The Class Action, Derivative Action, SEC Action and the SLC Investigation are collectively referred to as the "Proceedings").

On October 17, 2006, Richard Linden, and on September 20, 2006, Scott Veech, pursuant to sections 180.0851 and 180.0853 of the Wisconsin Business Corporation Act (the "Act"), requested that Merge advance their costs of defense in the Proceedings. (*Id.* at ¶¶ 61-64.) As part of this request, Defendants agreed to repay all costs so advanced if a court eventually determined that reimbursement under the Act was not required. (*Id.*) On June 27, 2008, Merge

settled the Derivative Action by implementing a host of corporate governance changes and establishing to the derivative-plaintiffs that prior corporate governance changes, including accepting Defendants' resignations, would address the multitude of issues raised in the Derivative Action. (*Id.* ¶ 60.) On November 17, 2009, Defendants agreed to settle the SEC Action by paying a fine to the SEC, disgorging hundreds of thousands of dollars in personal profit and being barred for 5 years from being an officer or director of a publicly traded company. (*Id.* ¶¶ 51-54.) Merge paid Defendants' respective counsel $878,934.64 during the course of the Proceedings, and there is still another $203,750.75 in outstanding legal fees that Merge has not paid Defendants' counsel. (*Id.* ¶¶ 65-67.)

Merge brought this action in February 2010 for a declaration that Merge neither has to indemnify Defendants for the liability they incurred to the SEC nor pay any of the outstanding fees to their counsel for work in defense of the SEC Action, the Derivative Action or the SLC Investigation because Defendants are not entitled to corporate indemnification under the terms of the Act. Merge also brought this action to recover the money it paid Defendants' counsel in defense of the SEC Action, Derivative Action and SLC Investigation pursuant to Defendants' undertaking agreements because corporate indemnification was never required. Merge is now entitled to summary judgment on its claims because there is no genuine issue of material fact that Defendants are not entitled to further corporate indemnification and, in fact, there is no genuine issue of material fact that they were never entitled to corporate indemnification.

*First*, the uncontroverted facts demonstrate that Defendants were not – as a matter of law – successful in defense of the SEC Action, the Derivative Action and the SLC Investigation. As a result, they are not entitled to indemnification of their costs of defense under section 180.0851(1) of the Act. *Second*, the uncontroverted facts also demonstrate that Defendants' own

3

willful misconduct and breach of duties to Merge were the cause of the liability and detriment they incurred. As a result, they are not entitled to indemnification under section 180.0851(2) of the Act, they breached their undertaking agreements with Merge and Merge is entitled – as a matter of law – to reimbursement (plus interest) of all costs it paid to defend Defendants in the SEC Action, Derivative Action and SLC Investigation.

## ARGUMENT

Merge is entitled to summary judgment because "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact" that Defendants are not entitled to indemnification under section 180.0851 of the Act. *See* Fed. R. Civ. Pro 56(c). Section 180.0851 contains two subsections that deal with different types of indemnification. Subsection (1) only covers defense costs, *i.e.*, Defendants' outstanding legal bills, and provides that Defendants are entitled to indemnification of expenses reasonably incurred if they were successful on the merits in defending the Proceedings. *See* Wisc. Stat. § 180.0851(1). Merge is entitled to summary judgment on its declaratory judgment claim because the uncontroverted facts demonstrate that Defendants were not successful in the SEC Action, the Derivative Action and the SLC Investigation.

Subsection (2), on the other hand, only applies where the director or officer was not successful, and requires the corporation to indemnify the director or officer against liability incurred unless the liability was the result of the officer's breach of a duty to the corporation and that breach involved, among other things, the officer's willful misconduct.[1] *Id.* § 180.0851(2). Defendants' undertaking agreements specifically incorporate subsection (2):

---

[1] As demonstrated herein, there is no issue of material fact that Defendants are not entitled to indemnification under either subsection of section 180.0851 of the Act. At a minimum, therefore, Merge is entitled to partial summary judgment on the issue of liability.

4

> I hereby undertake and agree to repay any allowance advanced to me pursuant to Article X of the Amended and Restated By-Laws of the Company and, if required by the Company, to pay reasonable interest on the allowance to the extent that it is ultimately determined under Section 180.0855 of the Wisconsin Statutes that indemnification under Section 180.0851(2) is not required….

(PFF ¶¶ 61-64.) Thus, and as demonstrated below, because the liability Defendants incurred to the SEC and in the Derivative Action is of the type for which indemnification is not available under subsection (2), Defendants must reimburse Merge for all amounts Merge paid to defend Defendants in the Proceedings. Indeed, the uncontroverted facts conclusively reveal that Defendants liability was the result of, among other things, their own willful misconduct, namely their knowing and intentional violations of company policies and federal securities laws.

I. **DEFENDANTS WERE NOT SUCCESSFUL IN THEIR DEFENSE OF THE SEC ACTION, THE DERIVATIVE ACTION OR THE SLC INVESTIGATION.**

There is no genuine issue of material fact related to Defendants' lack of success in the SEC Action, the Derivative Action and the SLC Investigation because Defendants either paid money or otherwise incurred a detriment as part of those actions. Under Section 180.0851(1) of the Act, Merge only needs to pay Defendants outstanding legal bills if they were successful in their defense of the Proceedings. *See* Wis. Stat. § 180.0851(1) ("A Corporation shall indemnify a director or officer, to the extent that he or she has been successful on the merits of otherwise in defense of a proceeding, … if the director or officer was a party because he or she is a director or officer of the corporation."). Success, for purposes of statutory corporate indemnification, means that the corporate officer or director avoided a "detriment" in the underlying litigation. *See, e.g., Waltuch v. Conticommodity Serv., Inc.*, 88 F.3d 87, 96 (2d Cir. 1996) ("[V]indication, when used as a synonym for success…, does not mean moral exoneration. Escape from an adverse

judgment *or other detriment*, for whatever reason, is determinative.") (applying Delaware law) (emphasis added) (*"Waltuch II"*).[2]

### A. Defendants' Payment of Fines, Disgorgement of Profits and Director & Officer Bars Conclusively Demonstrates they were not Successful in the SEC Action.

The law is clear that where a corporate officer pays money, incurs a fine or otherwise pays money toward a settlement, that corporate officer was not successful for purposes of corporate indemnification. *See, e.g., John v. John*, 153 Wis. 2d 343, 362 (Wis. Ct. App. 1989) (holding that "once losing, [the former director] is entitled to no indemnification" because he was not successful on the merits where he was enjoined from serving as director and ordered to pay disgorgement); *see also Waltuch v. Conticommodity Servs.*, 833 F. Supp. 302, 311 (S.D.N.Y. 1993), *rev'd on other grounds*, 88 F.3d 87 (2d. Cir. 1996) (holding that "[s]uccess … requires at least a negotiated settlement where the dismissal is with prejudice and without any payment or assumption of liability;" and, where a corporate officer pays a fine to the CFTC as part of a negotiated settlement, "[i]t is plain that [the officer's] settlement of the CFTC enforcement action does not meet this requirement") (applying Delaware law) (*"Waltuch I"*); *Merritt-Chapman & Scott Corp. v. Wolfson*, 264 A.2d 358, 360 (Del. Sup. Ct. 1970) ("[T]he defendants were charged with conspiracy and they were found guilty of conspiracy. It is difficult to understand how they can claim 'success' on the 'merits or otherwise…'"). Here, in the SEC Action, Defendants were forced to pay fines, disgorge profits and were barred from serving as corporate officers or directors for five years. (PFF at ¶¶ 52-53.) As a result, there is no genuine issue of material fact

---

[2] Wisconsin courts have yet to define the parameters of success for purposes of section 180.0851. The Delaware indemnification statute, however, is "materially the same" as section 180.0851. *Compare* Del. Ann. Tit. 8, § 145 *with* Wisc. Stat. § 180.0851. Courts, therefore, frequently rely on Delaware cases interpreting the Delaware statute to construe the Wisconsin counterpart. *See, e.g., Mauzy v. Edward Kraemer & Sons, Inc.*, No. 02-879 AJB, 2004 U.S. Dist. LEXIS 5098, *29 (D. Minn. Mar. 4, 2004) (relying on Delaware cases interpreting Title 8 Delaware Code section 145 to interpret section 180.0851 of the Wisconsin Business Corporation Act).

that Defendants were not successful in the SEC Action. *See, e.g., Waltuch I*, 833 F. Supp. at 311; *John*, 153 Wis. 2d at 362.

### B. The Derivative-Plaintiffs' Acceptance of Defendants' Resignations as part of a Series of Necessary Corporate Governance Changes Conclusively Demonstrates Defendants' Lack of Success in the Derivative Action and the SLC Investigation.

As the Second Circuit made clear in *Waltuch II*, a lack of success is not limited to merely paying money, incurring a fine or admitting liability. A corporate officer or director is not successful anytime that officer or director incurs a detriment in the underlying action. *Waltuch II*, 88 F.3d at 96 ("Escape from an adverse judgment or other detriment, for whatever reason, is determinative."). In the Derivative Action, the derivative-plaintiffs accepted Defendants' resignations as a principal part of the corporate governance changes Merge was required to implement to prevent a recurrence of the conduct that was the subject of the Derivative Action:

> 2.10 Merge acknowledges that Plaintiff's Shareholder Demand Letter was a factor it considered in recommending or implementing certain of the corporate governance changes post-dating that letter and that those corporate governance changes confer a substantial benefit on the Company.[3]
>
> 3.3 <u>Principal Terms of Settlement</u>. Partially in response to the Shareholder Demand Letter and the prosecution of the Action, the Board, on behalf of Merge, has implemented, or has agreed to implement, the following corporate governance changes:
>
> > (1) On May 15, 2006, the Board accepted defendant Linden's resignation from all positions with the Company and its subsidiaries, including as President, Chief Executive Officer, and director;
> >
> > (3) On July 2, 2006, the Board accept the resignations of ... defendant Veech, former Chief Financial Officer ..., from all position with the Company.

(PFF ¶ 60.)

---

[3] The derivative-plaintiffs sent their shareholder demand letter to the Merge Board of Directors on April 24, 2006, *i.e.*, prior to Defendants' resignations. (*Id.* at ¶ 58).

Thus, Defendants incurred a detriment (they were asked to resign) in the Derivative Action. There is, therefore, no genuine issue of material fact that Defendants were not successful in the Derivative Action or the SLC Investigation – an investigation that was conducted in direct response to the allegations made in the Derivative Action. Indeed, the very purpose of the SLC was to consider the derivative-plaintiff's allegations and determine how Merge would respond to or act on those allegations. *See, e.g.*, Wis. Stat. § 180.0744(2) (authorizing the formation of a special litigation committee in response to a derivative action); *Einhorn v. Culea*, 235 Wis. 2d 646, 655 (Wis. 2000) ("Courts and legislatures have allowed corporations to use special litigation committees to dismiss derivative actions in an attempt to balance the competing interests at issue: the shareholders' need to protect the corporation and the corporation's need to prevent meritless or harmful litigation.").

Because there is no genuine issue of material fact regarding Defendants' lack of success in the SEC Action, the Derivative Action and the SLC Investigation, there is simply no genuine issue of material fact regarding Defendants' entitlement to indemnification of any outstanding legal fees associated with these actions under section 180.0851(1) of the Act. Merge, therefore is entitled to a declaration that Merge need not indemnify, advance or pay any further fees on behalf of Defendants with respect to the SEC Action, the Derivative Action or the SLC Investigation.

## II. Defendants are not Entitled to Indemnification under Section 180.0851(2).

There is no genuine issue of material fact that Defendants must reimburse Merge for the amounts Merge previously paid to defend them in the Proceedings because there is no genuine issue of material fact that Defendants are not entitled to indemnification under section 180.0851(2) of the Act. As demonstrated above, Defendants must reimburse Merge for amounts

Merge paid to defend them in the Proceedings if indemnification is not required under section 180.0851(2) of the Act. (PFF ¶¶ 61-64). Subsection (2) provides indemnification is not required where Defendants' liability to the SEC and in the Derivative Action was (1) the result of a breach of their duties to Merge; and (2) that breach involved Defendants' willful misconduct, violations of criminal laws or receipt of improper personal benefits. *See, e.g.,* Wis. Stat. § 180.0851(2).

The uncontroverted facts demonstrate that Defendants, as officers of Merge, had the duties to:

- Refrain from engaging in or supporting any activity that would discredit the Company; (PFF ¶ 6.)

- Comply with rules and regulations of federal, state and local governments, and appropriate private and public regulatory agencies or organizations; (*Id.*)

- Prepare full, fair, accurate, timely and understandable financial statements, reports and recommendations after appropriate analyses of relevant and reliable information; (*Id.*)

- Ensure that no false, artificial, or misleading entries in the books and records of the Company shall be made; (*Id.*)

- Ensure that full, fair, accurate, timely and understandable disclosure is made in reports and other documents filed with or submitted to the Securities and Exchange Commission; (*Id.*)

- Promptly notify the Board of Directors if Defendants had any information or knowledge regarding a violation of Merge's Code of Ethics. (*Id.*)

Specifically, as the CEO and CFO, Defendants had responsibility for ensuring that Merge's financial statements and filings with the SEC presented Merge's financial results in conformity with Generally Accepted Accounting Principals. (PFF ¶ 7); *see also* 15 U.S.C. § 78m. During the relevant period, Defendants intentionally caused Merge to file quarterly and annual reports falsely representing that the company recognized revenue in accordance with

9

Case 2:10-cv-00082-JPS   Filed 06/10/10   Page 9 of 13   Document 14-1

GAAP. (PFF ¶¶ 16-17.) The facts further demonstrate that Defendants breached their duties by orchestrating a revenue recognition scheme that was designed to circumvent the accounting principals set forth in Statement of Position 97-2, Software Revenue Recognition ("SOP 97-2"). (*Id.* ¶¶ 8-10, 18-45.)

For example, in direct violation of SOP 97-2, on June 30, 2002, Linden instructed Merge's shipping department to ship software to a customer who had not yet authorized shipment so that Merge could recognize the revenue in the second quarter of 2002. (*Id.* ¶¶ 34-35.) After the end of the quarter, Linden instructed Merge sales personnel to backdate the contract and convince the customer to accept the early delivery of the product. (*Id.* ¶¶ 34-35.) Pursuant to SOP 97-2, as Linden was well aware, Merge could not recognize the revenue until after shipment. However, since the customer had not authorized shipment before the close of the quarter within which Linden wanted Merge to recognize the revenue, Linden took steps to scheme around SOP 97-2 to allow Merge to recognize the revenue in ostensible compliance with SOP 97-2. (*Id.* ¶¶ 34-35.)

Defendants also entered into oral and written side agreements with certain customers in which Defendants promised those customers specified future upgrades/enhancements with full knowledge that such promises were a violation of GAAP because Defendants used the "update" label for features that functionally did not qualify as "updates" under Merge's PCS agreement. (*Id.* ¶¶ 18-32.) The difference between the two is significant for purposes of GAAP. (PFF ¶¶ 8-10.) Specifically, Defendants promised hanging protocol and referring practice portal software to customers in early and late 2004 when such software was not available and functionally would not be an update, but rather an upgrade. (*Id.* ¶¶ 18-32.) Defendants' side agreements violated

GAAP because, *inter alia*, they knowingly promised future software and booked revenue from the sale of that future software, prior to the software being available. (*Id.* ¶¶ 18-32.)

The uncontroverted facts further demonstrate that Defendants' breaches of duty were:

1. The result of their own willful misconduct in that they intentionally circumvented SOP 97-2 to create the appearance that Merge was more successful than it was to drive up Merge's stock price and exercise millions of dollars in personal stock options. (*Id.* ¶¶ 15, 26, 34-35.)

2. A violation of the criminal laws of the United States; specifically, 15 U.S.C. § 78ff, which criminalizes violations of the federal securities laws that required Defendants to ensure Merge's financial statements were accurate. *See* 15 U.S.C. §§ 78m, 78ff.

3. All part of an elaborately orchestrated revenue recognition scheme from which Defendants received improper personal benefits, namely, millions of dollars from exercised stock options. (PFF ¶ 15.) Indeed, the SEC required Defendants to disgorge profits as "an equitable remedy designed to deprive [Defendants] of [their] unjust enrichment and to deter others from violating federal securities laws." *SEC v. Levine*, 517 F. Supp. 2d 121, 128 (D.D.C. 2007). The disgorgement penalty conclusively demonstrates that Defendants obtained an improper personal gain through their revenue recognition scheme. *See, e.g., Happ v. Corning Inc.*, No. 03-11258, 2005 U.S. Dist. LEXIS 39554 at *20. ("[I]n conducting the insider trading that was at issue in the SEC case, Happ acted for personal gain. The stock that Happ was found to have traded was his own, satisfying the 'personal' part; the avoidance of a loss in value that would otherwise have been realized is a sufficient 'gain'.")

11

Thus, there is no genuine issue of material fact that Defendants would not be entitled to indemnification under section 180.0851(2). As a result, there is no genuine issue of material fact that, pursuant to the express terms of their Undertaking Agreements, Defendants must reimburse Merge for the amounts Merge previously paid to defend Defendants in the Proceedings. (PFF ¶¶ 61-62.)

WHEREFORE, Merge requests that this Court enter judgment against Richard Linden in the amount of $785,092.19 and against Scott Veech in the amount of $93,842.45 plus prejudgment interest for breach of their Undertaking Agreements.

Dated:   June 10, 2010                               s/ Salvador A. Carranza
                                             One of the Attorneys for Plaintiff,
                                             **Merge Healthcare Incorporated**


                                             Michael J. Summerhill
                                             Salvador A. Carranza
                                             **SmithAmundsen LLC**
                                             150 N. Michigan Avenue
                                             Suite 3300
                                             Chicago, IL 60601
                                             312-894-3324
                                             312-894-3210 Facsimile
                                             MSummerhill@salawus.com
                                             SCarranza@salawus.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of June, 2010 the foregoing *Memorandum* was electronically filed with the Clerk of the Court using the CM/ECF system. A copy of the filed memorandum and accompanying exhibits was also served via regular first class mail upon the following individuals:

Andrew S. Oettinger
Godfrey & Kahn
780 N. Water Street
Milwaukee, WI 53202
414-287-9618
414-273-5198 (facsimile)
aoettinger@gklaw.com
Counsel for Richard Linden

Susan G. Schellinger
Davis & Kuelthau
111 East Kilbourn Avenue
Suite 1400
Milwaukee, WI 53202
414-225-1492
414-278-3692
sschellinger@dkattorneys.com
Counsel for Scott Veech


                                    s/ Salvador A. Carranza